458 So.2d 58 (1984)
Jose A. JIMENEZ, Appellant,
v.
GULF & WESTERN MANUFACTURING COMPANY, etc., Appellee.
No. 83-756.
District Court of Appeal of Florida, Third District.
October 23, 1984.
Tew, Spittler, Berger & Bluestein and Jeffrey Allen Tew, Coral Gables, for appellant.
Preddy, Kutner & Hardy and G. William Bissett, Miami, for appellee.
Before HENDRY, BARKDULL and BASKIN, JJ.
HENDRY, Judge.
Jose Jimenez appeals from an adverse final judgment entered on a jury verdict finding no liability on the part of the manufacturer in this products liability action. We affirm.
The machine involved in this cause was a punch, or power, press owned by Alva Metals and used to prepare metal pieces which would ultimately be assembled to make furniture. This was a multi-purpose machine, doing different functions depending on what dies were being used. It is undisputed *59 that the press, manufactured by appellee in 1937, had no point of operation or other guard system, although Alva Metals was contemplating the addition of one. Appellant's hand was crushed in the press when he inadvertently slipped and came into contact with some part of the die area. The complaint sounded in strict liability only, and alleged that appellee designed, manufactured, and placed on the market this press which was defective in design, unreasonably dangerous because it lacked a guard system, and the cause of appellant's injuries. Prior to trial, appellant filed a motion in limine to exclude evidence that any third party had a duty to modify the press to make it safer. This motion was not ruled upon. Appellee's expert, therefore, was allowed to read to the jury, over objection, 1971 federal OSHA[1] regulations which assigned to the employer the duty of placing a point of operation guard on this machine. In addition, he was allowed to testify about the "ANSI" (American National Standards Institute) standards which also placed the duty to guard on the employer.
It is well settled that if there is any competent evidence to support a verdict, that verdict must be sustained regardless of the district court's opinion as to its appropriateness. Helman v. Seaboard Coast Line Railroad Co., 349 So.2d 1187 (Fla. 1977); Miami Herald Publishing Co. v. Frank, 442 So.2d 982 (Fla. 3d DCA 1983); Gonpere Corp. v. Rebull, 440 So.2d 1307 (Fla. 3d DCA 1983); Wash-Bowl, Inc. v. Wroton, 432 So.2d 766 (Fla. 2d DCA 1983). The jury was presented with evidence tending to show that as early as 1922, private industry safety codes recognized that where a punch press could be used for multiple purposes, it made more sense to allow the purchaser to select a guard system compatible with the purpose to which he would use the machine. That is to say, even though there had been developed by 1937 several different guarding systems, and appellee does not dispute that this technology was available at the time it manufactured the punch press, the custom of the industry was to sell these machines unguarded and to let the user choose and install the relevant safety devices.[2] Trade custom at the time of a product's manufacture is a valid defense in a products liability suit. Ford v. International Harvester Co., 430 So.2d 912 (Fla. 3d DCA 1983). Thus, the jury could reasonably find that even though the manufacturer admittedly placed this machine on the market in a defective condition, the custom of the industry was such that the machine should not be considered "unreasonably dangerous" because the manufacturer's reasonable expectation was that the user would put a guard on the press.
Against this background, the question of the admissibility of the OSHA regulations, while still troubling, diminishes in importance in this case. First of all, the admission of evidence is a matter within the sound judicial discretion of the trial judge, whose decision in that regard must be viewed in the context of the entire trial. Division of Corrections v. Wynn, 438 So.2d 446, 448 (Fla. 1st DCA 1983). Second, it is clear that evidence of an OSHA violation is admissible in a negligence action for support for a manufacturer's assertion that its error was not the proximate cause of plaintiff's injury. Rabon v. Automatic Fasteners, Inc., 672 F.2d 1231 (5th Cir.1982) (applying Florida law); Clement v. Rousselle Corp., 372 So.2d 1156 (Fla. 1st DCA 1979), cert. denied, 383 So.2d 1191 (Fla. 1980). The question of the relevance of OSHA violations in a strict liability action, however, is one of first *60 impression in Florida. Decisions in other jurisdictions provide no clear guidance. Certain propositions may be stated, however.
It is well settled that OSHA does not provide the basis for an independent federal cause of action against either employers or third parties such as manufacturers, Melerine v. Avondale Shipyards, Inc., 659 F.2d 706 (5th Cir.1981), nor does it enlarge or diminish common law or statutory rights, duties, or liabilities. 29 U.S.C. § 653(b)(4) (1976). Perhaps evidence of an employer's OSHA violation is relevant to the issue of causation in a products liability suit, in much the same fashion as it would pertain to evidence of duty and proximate causation in a negligence action. Additionally, with the proper limiting instruction by the trial court, OSHA standards may constitute some evidence (perhaps weak) of industry custom or practice. There is a suggestion in the cases, however, that, with respect to products liability, an employer's duty under OSHA should not in fact reduce a manufacturer's obligation to design and produce safe products. Rexrode v. American Laundry Press Co., 674 F.2d 826, 831 (10th Cir.1982) ("the issue of manufacturer compliance with industry standards is generally considered to be irrelevant in a strict liability case. Rather, it relates to the question of the manufacturer's duty of care under a negligence theory.") But see McKinnon v. Skil Corp., 638 F.2d 270, 276-77 (1st Cir.1981) ("evidence of the UL standards, and this particular saw's compliance with the standards, was properly admitted as some evidence of the defendant's due care regarding the design and manufacture of the saw and of industry custom and practice."). There is also some question about a manufacturer's standing to raise the fact of an employer's OSHA violation.[3]
We need not resolve these issues here. There is ample evidence in the record to the effect that there was a long-standing industry practice which assigned to the user the responsibility of placing a guard on the machine. Appellant neither challenges the relevance of this practice nor presents evidence to refute its existence. Instead, he argues that there were effective, practical safety guarding systems available in 1937 to be used on punch presses, which fact appellee does not deny. Furthermore, appellant's foreman testified that Alva Metals did, in fact, know that it was supposed to put a guard on the machine, that it had already put a guard on another press manufactured by appellee, and that the only reason the punch press which injured appellant was still unguarded was because he, the foreman, had "not gotten around to doing it." On the basis of this evidence alone, without reference to the OSHA and ANSI standards, the jury could conclude that the chain of causation was broken and find the appellee not liable for appellant's injury. It is axiomatic in a strict liability case that the defect must be the legal cause of plaintiff's injury. West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976).
Based on the foregoing, we find that admission of evidence on the OSHA and ANSI standards in this case was harmless in light of the other, substantial, competent *61 evidence presented. All other points have been considered and found to be without merit. The judgment below is affirmed.
Affirmed.
NOTES
[1] Occupational Health and Safety Act, 29 U.S.C. § 651, et seq. (1976) (as amended).
[2] It must be pointed out, however, that this manufacturer uses the opposite argument where there is an injury and the user has placed a guard on the press. See Merriweather v. E.W. Bliss Co., 636 F.2d 42 (3d Cir.1980) wherein it argued that it could not be held liable for the injuries sustained by Mr. Merriweather because the press in question had been substantially changed (i.e. guarded) by General Electric (plaintiff's employer) after it had left Bliss' control. Id. at 43.
[3] This is a defensive use of the regulations, an attempt to shift responsibility by showing that some OSHA violation had been committed and said breach is an intervening or superseding cause of plaintiff's injury. It is clear that a defendant manufacturer cannot use an OSHA violation to argue that such a violation constitutes negligence per se because the manufacturer is not a member of the class the regulations are designed to protect. See Groh v. Hasencamp, 407 So.2d 949 (Fla. 3d DCA 1981), rev. denied, 415 So.2d 1360 (Fla. 1982) for the Florida rule on negligence per se. Trial courts must make certain that juries understand this; that simply because OSHA is a federal law, it is not dispositive on state law questions of negligence or products liability. It is problematical as to whether a manufacturer should be allowed to raise, as here, the employer's violation of the regulations as the sole cause of plaintiff's injury when the plaintiff can't bring the employer in as a party because of workers' compensation immunities and the manufacturer choses not to bring him in either. Again, this situation calls for careful explanation by the trial court so that the jury is clear on the responsibilities of each party.