527 A.2d 1012

Barry ECK, Appellant,

v.

POWERMATIC HOUDAILLE, DIVISION OF HOUDAILLE INDUSTRIES, INC., a corporation, and Hermance Machine Company, a corporation, Appellees.

Barry ECK

v.

POWERMATIC HOUDAILLE, DIVISION OF HOUDAILLE INDUSTRIES, INC., a corporation, and Hermance Machine Company, a corporation.

Appeal of POWERMATIC HOUDAILLE, DIVISION OF HOUDAILLE INDUSTRIES, INC., a corporation.

Barry ECK

v.

POWERMATIC HOUDAILLE, DIVISION OF HOUDAILLE INDUSTRIES, INC., a corporation, and Hermance Machine Company, a corporation.

Appeal of HERMANCE MACHINE COMPANY, a corporation.

Superior Court of Pennsylvania.

Argued Feb. 20, 1987.

Filed June 1, 1987.

180

Louis C. Long, Pittsburgh, for Eck, appellant (at 441) and appellee (at 473 and 474).

Richard A. Gray, Williamsport, for Powermatic, appellant (at 473) and appellee (at 441 and 474).

John P. Pietrovito, Williamsport, for Hermance, appellant (at 474) and appellee (at 441 and 473).

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

WIEAND, Judge:

In the instant appeal, we are asked to determine the role of "foreseeability" in a "substantial change" defense asserted in a product liability action. The trial court charged the jury that any substantial change made to a product by a user or consumer would relieve the manufacturer and distributor of the product from liability for injuries caused thereby. Plaintiff-appellant argues that the jury should have been instructed that the manufacturer and distributor would be absolved of liability only for subsequent product modifications which were unforeseeable. We agree. Because we conclude that this erroneous instruction may have affected the verdict which the jury returned in favor of the manufacturer and distributor, we reverse and remand for a new trial.

On January 6, 1983, Barry Eck suffered injuries to his left hand when his arm came in contact with the rotating blade of an electrically-powered, tilting arbor saw. The saw had been manufactured by Powermatic Houdaille (Powermatic) and had been sold by Powermatic to Hermance Machine Company (Hermance), a commercial distributor of Powermatic saws. Hermance, in turn, had sold the saw to Joseph Shumbat for use in his construction business. The saw, as manufactured by Powermatic and sold to Hermance and Shumbat, contained a safety guard to prevent the hands of the operator from coming into contact with the blade of the saw while the saw was being operated. After purchasing the saw from Hermance, Shumbat removed the safety guard and permanently fastened a "shim" with a formica covering to the fence of the saw. This was done to prevent pieces of wood from becoming caught in the saw during operation. Shumbat subsequently sold the saw, in its altered condition, to Eck, who was operating the saw in its altered condition at the time of the accident.

Eck commenced an action against Powermatic and Hermance, alleging, inter alia, that the defendants were strictly liable for his injuries under Restatement (Second) of Torts

§ 402A.[1] Specifically, he contended that the saw had been defective because, inter alia, it could not be operated to perform certain functions without removing the guard, the guard could too readily be removed by the operator, and it contained a warped fence which caused the pieces of wood being cut to "bind," thereby increasing the possibility that the operator's hands would be drawn toward the blade .of the moving saw. The defendants' primary defense was that the saw had not been defective when sold in its original form to Shumbat, but had become defective, if at all, only after Shumbat had removed the safety guard and fastened a "shim" to the fence.[2]

With respect to the issue of substantial change, the trial court instructed the jury as follows:

A seller, manufacturer or distributor is responsible only for such defects as exists at the time the product leaves its control. The seller, manufacturer or distributor is not liable for defective conditions created by substantial changes in the product occurring after the product has been sold. So even if you find the saw in question was defective it is for you, the Jury, to then decide whether the defect originated at the time of the sale by the Defendant, Powermatic and Hermance or whether the defect originated as a result of the actions of Ernest L. Shumbat Company in removing the guard or failing to supply the manuals, and adding the shim. And I am

[1]. That section provides as follows:
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 (2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

[2]. The defendants also asserted the defense of assumption of risk.

going to read that again because I think you should hear it in a cohersive [sic] manner. Even if you find the saw in question is defective it is for you, the Jury, to decide whether that defect originated at the time the sale was made by the Defendant, Powermatic and Hermance, or whether the defect resulted as a result of the actions of Ernest L. Shumbat and Company by removing the guard, failing to supply the manuals and adding the shim. If you find that the shim was permanently fastened to the fence of the saw by Ernest L. Shumbat Company, Inc. or that its agents or employees ... constituted substantial change in the condition of the saw before it reached the Plaintiff then Hermance Machine Company and Powermatic are not liable to the Plaintiff's injuries. In other words, if you find that the fastening of the shim to the saw by Shumbat was a substantial change in the condition of the saw then the Defendants would not be liable. If you find that the removal of the guard and the failure to supply the guard to Barry Eck by Ernest L. Shumbat Company, Inc. constituted a substantial change in the condition of the saw before it reached Barry Eck then the Defendants Hermance and Powermatic are not liable for the Plaintiff's injuries if the Plaintiff's injuries were caused by the failure to have a guard. If you find the shim was permanently fastened to the fence of the saw by Ernest L. Shumbat or its agents or done in an improper manner then such alteration of the saw could constitute a substantial change in the condition of the saw.

Immediately thereafter, the trial court invited counsel to object or suggest additions to the jury instructions. The following colloquy between counsel for Eck and the trial court occurred:

By Mr. Eck:

I have some, your Honor. Charge to Jury that if they found a substantial change by Shumbat, and if it was a cause in the injury ...

By The Court:

Substantial.

By Mr. Eck:

Then the Defendants are relieved of liability. *I believe the proper charge is, that if a substantial change was caused by the actions of the Defendants or was anticipated by the Defendants, [then] that substantial change is not a defense.*

By The Court:

Okay.

By Mr. Eck:

I think we have got a real problem here.

By Mr. Eck:

For this reason, that if they find the Shumbat shim was a substantial factor and caused the accident, but assuming they also find that this shim was put on because of a warp condition that Shumbat didn't create, that it existed at the time of the sale, you then have a defect, but he attempted to correct the defect, the defect still existed and his intervening negligence is not a defense. That is where I think we have got a serious problem, that is why I objected yesterday because I thought we agreed it should not be a part of this proceeding. It makes it I think a serious problem.

By The Court:

Okay.

. . . .

By Mr. Eck:

So I think they ought to be told two things. I seriously object to the charge of substantial change as relieving the defense because I think it only relieves the Defendants if they didn't cause it. If they cause a defect and admittedly it is a defect they can't exonerate themselves by saying, oh, the guy didn't fix my defect right is what you are saying, then that is a problem.

By The Court:

They have to find the substantial change itself was the cause.

By Mr. Eck:

I agree.

By The Court:

Okay, I understand your argument.

By Mr. Eck:

The first issue I have no problem.

By The Court:

I am going to deny the request to add to the questions or to change the charge regarding substantial change after the saw left the hands of Hermance and Powermatic.

Transcript of Sidebar Discussion at 2–4 (emphasis added). No further instructions were given by the trial court with respect to the issue of substantial change, and the case thereafter was submitted to the jury.

The jury was provided with a verdict form in which they were asked to answer seven special interrogatories. These questions, and the jury's responses thereto, were as follows:

1. Was the guard assembly, supplied with the subject saw, defective when it was sold by the Defendants, Powermatic and Hermance Machine Company, in 1980?

 x Yes No

2. Was the cast iron fence, supplied with the subject saw, defective when it was sold by the Defendants, Powermatic and Hermance Machine Company, in 1980.

 x Yes No

Note: If your answered "No" to both questions #1 and #2, stop and do not answer any of the following questions. If you answer "Yes" to either question #1 or #2, answer question #3.

3. Was the defect or defects found by you in answering question #1 or question #2 a substantial factor in bringing about the accident of January 6, 1983?

 Yes x No

Note: If your answer to question #3 is "No," stop and do not answer any of the following questions. If you answered "Yes" to question #3, answer question #4.

4. Did Plaintiff, Barry Eck, voluntarily assume the risk of his injuries?

_____Yes _____No

Note: If your answer to question #4 is "Yes" stop and do not answer any of the following questions. If you answered "No" to question #4, answer question #5.

5. Was there a substantial change making the saw defective after it was delivered and left the control of Defendants, Powermatic and Hermance?

_____Yes _____No

Note: Answer question #6 only if you answered "Yes" to question #5. If you answered "No" to question #5, do not answer question #6 and proceed to question #7.

6. Was the substantial change found by you in answering "Yes" to question #5 a substantial factor in bringing about the accident of January 6, 1983?

_____Yes _____No

Note: If your answer to question #6 was "Yes," stop and do not answer question #7. If your answer to question #6 was "No" proceed to question #7.

7. Indicate the total amount of damages you award the Plaintiff for the injuries and damages sustained as a result of the accident of January 6, 1983.

Answer $_____

On the basis of the jury's answers to these interrogatories, a verdict was entered for the defendants.

Eck filed a motion for new trial in which he contended that the charge of the trial court on the issue of substantial change had been erroneous. He asserted specifically that the court should have instructed the jury that the defendants would not be relieved of liability if the alterations made by Shumbat to the saw were foreseeable. In response to Eck's motion, the defendants argued, inter alia,

that by failing to request such a charge during trial, Eck had waived the right to challenge the court's instruction.

Following argument, the trial court determined that Eck had properly preserved his objections to the charge. The court also agreed with Eck that its instruction with respect to the issue of substantial change, in fact, had been erroneous. Nevertheless, the court denied Eck's request for a new trial on the ground that the erroneous portion of the charge had been harmless and had had no effect upon the jury's verdict. The court observed that the jury, in essence, had made only two determinations: that the saw, as manufactured by Powermatic and sold by Hermance, was defective; and that the defects in the saw were not a substantial factor in causing Eck's injuries. Because Eck had failed to make out a prima facie case of strict liability, the court maintained, the jury had not reached the issue of substantial change. As a result, the court concluded, any omission with respect to the substantial change instruction had been harmless. After judgment was entered on the verdict, all parties appealed.

Eck, in his appeal, contends that because the charge of the trial court failed to address the issue of foreseeability, it necessarily had an adverse impact on the jury's determination of causation. He seeks a new trial limited solely to that issue. The jury's determination of the saw's defectiveness, it is asserted, was unaffected by the erroneous charge of the court and, therefore, this issue should not be relitigated.

The defendants, on the other hand, renew their argument that Eck failed to preserve his objection to the trial court's instructions concerning the issue of substantial change. The remainder of the defendants' arguments merely contest the allegations made by Eck in his appeal.

 To be entitled to prosecute an appeal, one must have a present interest in the subject matter and must be aggrieved by the judgment, order or decree entered. *Elliot Estate,* 388 Pa. 321, 323, 131 A.2d 357, 358 (1957); *Burchanowski v. Lycoming County,* 32 Pa.Cmwlth. 207, 210, 378

A.2d 1025, 1027 (1977). To be an "aggrieved party" for purposes of appeal, a litigant must be adversely affected by the order appealed from and he or she must have some pecuniary interest which is injuriously affected. *Pierro v. Pierro,* 434 Pa. 131, 132, 252 A.2d 652, 653 (1969). See: *Louden Hill Farm, Inc. v. Milk Control Commission,* 420 Pa. 548, 551, 217 A.2d 735, 736–737 (1966); *Atlee Estate,* 406 Pa. 528, 532, 178 A.2d 722, 724 (1962). "When one issue in a case is decided against a party, but the party prevails on the other issues and wins the case in chief, the party cannot claim to have been 'aggrieved' by the decision; he therefore lacks standing to appeal the single issue decided against him." *Burchanowski v. Lycoming County, supra.* See: *Bensalem Township School District v. County Commissioners of Bucks County,* 8 Pa.Cmwlth. 411, 303 A.2d 258 (1973).

In the instant case, the jury returned a verdict in favor of the defendants and judgment thereafter was entered on the verdict. The verdict did not injuriously affect any pecuniary interest of the defendants; therefore, they are not "aggrieved" parties who are entitled to pursue an appeal. This is so despite the fact that the trial court determined, adversely to the defendants, that Eck had properly preserved the issue concerning the propriety of the court's instructions. Because the defendants prevailed and judgment was entered in their behalf, they cannot file a separate appeal merely because a single issue was decided against them. The appeals at Nos. 473 and 474 Harrisburg, 1986, therefore, will be quashed. The arguments advanced by the defendants, however, will be considered in determining the appeal filed by Eck.

 In reviewing an order denying a motion for new trial, our scope of review is limited. An order refusing a new trial will be reversed on appeal only where there has been a clear abuse of discretion or an error of law which controlled the outcome of the case. *Chesko v. Steinbough,* 434 Pa. 82, 84, 252 A.2d 644, 645 (1969); *Collins v. Hand,* 431 Pa. 378, 382, 246 A.2d 398, 400 (1968); *Wood v. Smith,*

343 Pa.Super. 547, 550, 495 A.2d 601, 603 (1985); *Fannin v. Cratty,* 331 Pa.Super. 326, 331, 480 A.2d 1056, 1058 (1984). An erroneous jury instruction may provide the basis for a new trial if it is shown that the instruction was fundamentally in error and that it might have been responsible for the verdict. *Hawthorne v. Dravo Corp., Keystone Division,* 352 Pa.Super. 359, 368, 508 A.2d 298, 303 (1986).

■ Preliminarily, we consider whether the issues raised in Eck's appeal have been properly preserved for appellate review. It is well-settled that a matter not raised in the trial court will not be considered on appeal. *Commonwealth v. National Federation of the Blind,* 471 Pa. 529, 536, 370 A.2d 732, 736 (1977); *Keystone Building Corp. v. Lincoln Savings and Loan Association,* 468 Pa. 85, 91, 360 A.2d 191, 194 (1976); *Wenzel v. Morris Distributing Co.,* 439 Pa. 364, 374, 266 A.2d 662, 667 (1970). This includes an alleged error in the jury instructions delivered by the court. Where a party fails to object to a jury instruction, he or she is precluded from assigning the alleged error as a basis for a new trial on appeal. *Broxie v. Household Finance Co.,* 472 Pa. 373, 372 A.2d 741 (1977); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

■ Instantly, Eck argues that the jury should have been instructed that the defendants would not be relieved of liability for the injuries caused by Shumbat's post-delivery modification of the saw if the changes made by Shumbat were foreseeable. Although Eck did not include a specific point for charge on this issue, the record reveals that he did make a verbal request therefor after the trial court had concluded its jury instructions. The record reveals further that Eck's proposed instruction was, in fact, considered and rejected by the trial court before the case was submitted to the jury.[3] Under these circumstances, we conclude that

**3.** The record indicates that Eck had raised the issue of foreseeability during an in-chambers conference held before the court delivered its charge to the jury. There, counsel for Eck had stated that "if the subsequent changes [made by Shumbat to the saw were] foreseeable, then those are not changes which would insulate a manufacturer" from liability. However, the trial court determined to instruct the

Eck's challenge to the charge was properly preserved for appellate review.

Under section 402A(1)(b) of the Restatement (Second) of Torts, a manufacturer or seller of a defective product is liable for harm caused thereby where the product is expected to and does reach the user or consumer without substantial change in the condition in which it has been sold. Interpreting this section of the Restatement, this Court, in *D'Antona v. Hampton Grinding Wheel Co.*, 225 Pa.Super. 120, 310 A.2d 307 (1973), stated that "[t]he test in such a situation is whether the manufacturer could have reasonably expected or foreseen such an alteration [in its product]; such a determination is for the fact-finder unless the inferences are so clear that a court can say as a matter of law that a reasonable manufacturer could not have foreseen the change." *Id.*, 225 Pa.Superior Ct. at 125, 310 A.2d at 310. Similarly, a plurality of the Supreme Court, in *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974), opined that "the question whether post-delivery alteration in a product is a superceding cause of harm to a plaintiff may turn on foreseeability as well as causation in fact. If the alteration should have been reasonably anticipated by the seller, it would be a 'substantial change' within the meaning of § 402A only if it were negligently or improperly implemented." *Id.*, 457 Pa. at 333 n. 15, 319 A.2d at 922 n. 15.

■ These decisions suggest that the concept of "foreseeability" is a significant factor in determining whether a manufacturer or seller will be held responsible for injuries resulting after post-sale modifications of a product have been made. The defendant-appellees argue, however, that the viability of this line of authority has been undercut by the subsequent decision of the Pennsylvania Supreme Court in *Azzarello v. Black Brothers Co.*, 480 Pa. 547, 391 A.2d 1020 (1978). Their argument, stated syllogistically, is as follows: *Azzarello* precludes the injection of negligence

jury consistently with Pennsylvania Standard Jury Instruction 8.08, which provides that any substantial change will relieve a product-seller of liability.

principles into strict product liability actions; "reasonable foreseeability" is a negligence concept; therefore, under *Azzarello,* the concept of foreseeability may not be used in a strict liability action to elucidate the responsibility of a manufacturer for injuries caused by a product which has undergone substantial alteration after leaving the manufacturer's control.

A similar argument was rejected by the United States Court of Appeals for the Third Circuit in *Merriweather v. E.W. Bliss Co.,* 636 F.2d 42 (3d Cir.1980). There, the trial court had refused to charge the jury that reasonably foreseeable changes in a product would not absolve the manufacturer of liability for injuries caused by that product. Instead, the jury was instructed on the issue of substantial change without any reference to reasonable foreseeability. In finding this instruction to be erroneous under Pennsylvania law, the Third Circuit stated:

> The court below ... apparently felt that *Azzarello* had, by implication, overruled [*D'Antona* and *Kuisis* and federal decisions which had followed them] and that, under *Azzarello,* a jury charge on substantial change could not be framed in terms of reasonable foreseeability. We disagree. As we previously noted, the Pennsylvania Supreme Court's decision in *Azzarello* simply deleted the phrase "unreasonably dangerous" from jury instructions in product liability cases. It did not purport to address the question of substantial change at all. Moreover, following *Azzarello* this court has specifically approved jury charges in product liability cases which were framed in terms of reasonable foreseeability. *See, Baker v. Outboard Marine Corp.,* 595 F.2d 176, 183–184 (3d Cir. 1979), (approving an instruction on superseding cause in a product liability case which incorporates reasonable foreseeability). *See also, Heckman v. Federal Press Co.,* [587 F.2d 612 (3d Cir.1978) ]. Therefore we find no precedential basis for the district court's conclusion that *Azzarello* has implicitly deleted the phrase reasonably foreseeable from jury instructions on substantial change.

But more fundamentally, we find that the trial court's instruction was in error because it directly contradicted the policies underlying the Pennsylvania Supreme Court's decision in *Azzarello*. In *Azzarello* the court eschewed the use of the phrase unreasonably dangerous in large part because it felt that that phrase improperly de-emphasized the duty of the manufacturer to act as the guarantor of his product's safety. *See Azzarello, supra,* 480 Pa. at 559, 391 A.2d at 1027. Were we to adopt the approach to the substantial change doctrine accepted by the district court in this case we would significantly undercut this policy. If the manufacturer is to effectively act as the guarantor of his product's safety, then he should be held responsible for all dangers which result from foreseeable modifications of that product. Yet under the view taken by the court below this would not occur. Rather, once the modification of the product was shown to be substantial the manufacturer would be excused from all liability for injuries caused by that product, even if that modification was clearly foreseeable. As a practical matter, therefore, the district court's decision broadens considerably the scope of the substantial change defense. Because the broadening of this defense is inconsistent with the concept of the manufacturer as the guarantor of his product, we feel that the charge given by the district court is in direct conflict with *Azzarello*.

*Id.* at 45–46.

The analysis in *Merriweather* is persuasive. *Azzarello* had no effect upon the established rule of law which requires consideration of "foreseeability" in connection with a "substantial change" defense. As we recently reiterated in *Thompson v. Motch & Merryweather Machinery Co.,* 358 Pa.Super. 149, 516 A.2d 1226 (1986), "[i]f the alteration [in a product] *could not reasonably have been foreseen* by the manufacturer and if it were a superceding cause of the user's injury, the manufacturer would be relieved of liability even if there had been design defects existing at the time the [product] was delivered to the purchaser." *Id.,* 358

Pa.Superior Ct. at 155, 516 A.2d at 1229 (emphasis added). Therefore, it was error in the instant case for the trial court to instruct the jury that any substantial change in the offending power saw would relieve the defendants of liability for the injuries sustained by Eck.

■ For a new trial to be required, however, it must appear that the erroneous instruction may have affected the jury's verdict. Defendant-appellees contend that any error in the trial court's instruction on substantial change was harmless because it could have had no bearing on the outcome of the trial. We disagree.

There is general agreement among legal authorities that "the question of liability of a manufacturer or seller for injuries sustained by the user of an altered product involves the issue of whether the injuries were proximately caused by a defect in the product as manufactured and sold, or by a defect created by the alteration by the user or third party." Annot., *Products Liability: Alteration of Product After It Leaves Hands of Manufacturer or Seller As Affecting Liability For Product-Caused Harm*, 41 A.L. R.3d 1251, 1253 (1972). Most courts have held that "a manufacturer or seller is not liable for injuries caused by a defective product if the defect was created by an alteration which amounts to an intervening or superseding cause, as distinguished from a concurrent cause, of the injuries." *Id.*

The appellate decisions of this Commonwealth are in accord. In *Kuisis v. Baldwin-Lima-Hamilton Corp., supra,* it was observed that "courts which have discussed post-delivery alterations in terms of substantial change have treated the problem as one of proximate causation." *Id.* 457 Pa. at 333 n. 15, 319 A.2d at 922 n. 15. Aligning itself with these authorities, the Court opined that post-delivery modifications of a product have relevance to the issue of the manufacturer's liability "only if, individually or in combination, they amounted to a superseding cause of plaintiff's injuries." *Id.,* 457 Pa. at 333, 319 A.2d at 922. In a similar vein, a panel of this Court has recently suggested that where a product is defective at the time it is

delivered to the user or consumer, the manufacturer will be relieved of liability only if the product was substantially altered after it left the manufacturer's control, *and* the modifications made to the product were a superseding cause of the user's injury. See: *Thompson v. Motch & Merryweather Machinery Co., supra* 358 Pa.Super. at 154–155, 516 A.2d at 1229.

As is betokened by these decisions, evidence of post-delivery modifications is relevant only to show that the altered product was the cause in fact of the plaintiff's injuries. To this extent, the issue of substantial change is part and parcel of a causation analysis.

In the instant case, the jury, in response to the interrogatories contained in the verdict slip, determined that the safety guard assembly and cast iron fence of the saw had been defective at the time when it was sold by the defendants. Nevertheless, it was the jury's conclusion that these defects were not a substantial factor in causing Eck's injuries. In reaching these determinations, the jury answered only the first three interrogatories appearing on the verdict form. The remaining questions, including numbers five and six which related to the issue of substantial change, were left unanswered. Interpreting the completed verdict form, the trial court determined that because Eck had failed to make out a prima facie case of strict liability, the jury did not reach the defense of substantial change. The court concluded, therefore, that any error in the instruction on substantial change could not have had any effect upon the verdict.

The reasoning of the trial court is faulty. Although it is true that the jury did not respond to the special interrogatories which addressed the issue of substantial change, it is difficult to imagine that the issue could have escaped the jury's consideration. As we have already observed, the issues of substantial change and causation are inseparable. Here, the issue of causation was the focal point of the trial and was hotly contested by the parties. The foundation of defendant-appellees' defense was that Eck's injuries had

been caused by the modifications which had been made to the saw by Shumbat. Eck argued, on the other hand, that the cause of the accident was the defendants' failure to design and manufacture the saw in a way that alterations thereto by consumers would have been unnecessary. In deciding the issue of causation, therefore, it was essential for the jury to consider whether and to what extent the saw had been altered by Shumbat before it had been sold to Eck. This remains true even though the trial court erroneously separated the issues of causation and substantial change in the interrogatories on the verdict form. Assuming, as we must, that the jury *did* consider the issue of substantial change in determining the cause of the accident, the charge of the court with respect to this issue looms significant. Any error in the instructions on substantial change, therefore, in all probability had an impact on the jury's resolution of the causation issue.

 "It is the normal practice in granting a new trial to grant it generally against all parties on all issues." *Stokan v. Turnbull,* 243 Pa.Super. 440, 445, 365 A.2d 1305, 1307 (1976), *rev'd on other grounds,* 480 Pa. 71, 389 A.2d 90 (1978). The power to grant a limited new trial should be exercised cautiously. *Gagliano v. Ditzler,* 213 Pa.Super. 238, 240, 247 A.2d 632, 633 (1968), *aff'd,* 437 Pa. 230, 263 A.2d 319 (1970). *Troncatti v. Smereczniak,* 428 Pa. 7, 9, 235 A.2d 345, 346 (1967); *Rosen v. Slough,* 212 Pa.Super. 398, 402, 242 A.2d 898, 900 (1968). Where the issues are interwoven and cannot be separated without injustice to one of the parties, the other party should not be permitted to select for retrial the issues decided against him and upon the rehearing treat those issues decided in his favor as settled. *Friedman v. Matovich,* 191 Pa.Super. 275, 281, 156 A.2d 608, 611 (1959).

In the case sub judice, the court's erroneous instruction with regard to the issue of substantial change may well have affected the jury's determination of defectiveness and causation alike, for the two issues were inextricably interwoven. As the authors of one prominent treatise have

observed, "when there has been an unforeseeable or uncontemplated alteration in a product ..., it is difficult to determine (1) whether there was ever a defect in the product when sold and (2) if so, whether the defect contributed to the damaging event." *Prosser and Keeton on Torts* § 102, at 711 (5th ed. 1984). We hold, therefore, that upon remand the entire issue of liability must be relitigated.

The appeals at Nos. 473 and 474 Harrisburg, 1986 are quashed. The appeal at No. 441 Harrisburg, 1986 is sustained; the judgment is reversed; and the case is remanded for a new trial generally. Jurisdiction is not retained.